UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lance Addison, Steven R. Schuyler, and Patricia Fitzharris,

Plaintiffs,

Civ. File No. 01-776 (PAM/RLE)

v.

**MEMORANDUM AND ORDER**

Everest Connections Corp., Everest Global Technologies, LLC, and Utilicorp United, Inc.,

Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss/Stay and to Compel Arbitration. In the alternative, Defendants seek to transfer venue of this action to either the District of Delaware or a court in one of the Districts in Missouri. For the reasons that follow, Defendants' Motion is denied.

**BACKGROUND**

Plaintiffs Lance Addison, Steven Schuyler, and Patricia Fitzharris are former employees of Defendant Everest Connections Corporation ("Everest"), which is a wholly owned subsidiary of Defendant Everest Global Technologies, LLC ("Everest Global"). Everest Global is, in turn, owned in part by Defendant Utilicorp United, Inc. ("Utilicorp"). Everest and Everest Global provide telephone, internet, and cable television services. Everest hired Plaintiffs at the start of its operations in Minnesota in the late summer and fall

FILED OCT 10 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

of 2000. In March 2001, Plaintiffs terminated their employment with Everest. They filed this lawsuit shortly thereafter.

Everest Global was formed by Utilicorp and GLA New Ventures LLC ("GLA") in April 2000. In forming the new company, Utilicorp and GLA entered into a Limited Liability Company Agreement ("LLC Agreement"). That Agreement contains a broad arbitration provision. (Potter Aff. Ex. 1 § 12.1.) When Everest hired Plaintiffs, it asked them to sign various employment agreements and stock agreements. One of these agreements, the so-called Vesting Agreement, provides that the employee agrees to be bound by the terms of the LLC Agreement. None of the agreements Plaintiffs signed, however, contained an arbitration provision.

Defendants now contend that this action should be dismissed or stayed and that Plaintiffs should be compelled to arbitrate their claims according to the terms of the arbitration provision in the LLC Agreement. Defendants also argue that Plaintiffs have failed to state a claim for tortious interference with contract under any relevant law. In the alternative, Defendants seek to transfer venue of the action to a "more convenient" forum, either the District of Delaware, as the forum-selection clause in the Vesting Agreement provides, or to one of the Districts in Missouri, where all Defendants are headquartered.

**DISCUSSION**

For the purposes of the Motion to Dismiss, the Court takes all facts alleged in the Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court

must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**A. Arbitration**

The threshold issue is whether a valid agreement to arbitrate exists between the parties. As a matter of fundamental contract law, Plaintiffs cannot be held to the terms of a contract to which they did not assent. See, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995) (where plaintiffs did not sign contract containing arbitration agreement, they could not be compelled to submit dispute regarding contract to arbitrator); AT&T Tech., Inc. v. Communication Workers of Am., 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.").

Defendants assert that Plaintiffs should be compelled to arbitrate their claims because the various agreements Plaintiffs signed are "inextricably intertwined" with the LLC Agreement and its arbitration provision. Plaintiffs each signed three agreements at or near the beginning of their employment with Everest: an Employment Agreement, a Noncompete Agreement, and the above-described Vesting Agreement. As stated above, none of these agreements contains an arbitration clause. Both the Employment and Noncompete

Agreements merely reference the LLC Agreement, providing that some specific terms should be defined as provided in the LLC Agreement. The Vesting Agreement, however, purports to incorporate the terms of the LLC Agreement. Section 2(c) of the Vesting Agreement states: "Employee hereby acknowledges and agrees as follows: . . . Employee shall comply with and be bound by all terms and provisions applicable to 'Members' under the LLC Agreement." (Potter Aff. Ex. 7.) Plaintiffs contend that they were not provided with a copy of the LLC Agreement at any time before or during their employment with Everest.

Plaintiffs did not sign and were not parties to the LLC Agreement. The Court declines Defendants' invitation to shoehorn the LLC Agreement's arbitration provision into the agreements Plaintiffs did sign. Forcing Plaintiffs to arbitrate their disputes based on an arbitration provision in a contract Plaintiffs did not sign is contrary to fundamental contract law, not to mention common sense. Moreover, the existence of an arbitration provision in the LLC Agreement is evidence that Defendants knew how to incorporate such a provision in a contract. If Defendants wished to submit to arbitration all claims arising out of the various employment agreements, they should have included arbitration provisions in those agreements. Defendants' Motion to Compel Arbitration is denied.

**B. Dismissal for Failure to State a Claim**

In the Complaint, Plaintiffs allege that Utilicorp tortiously interfered with Plaintiffs' contracts with Everest. Defendants assert that this claim fails as a matter of law, because Everest is a subsidiary of Utilicorp and a parent cannot interfere with a subsidiary's

contracts, and because Plaintiffs failed to plead that Utilicorp acted in bad faith.

Defendants' arguments are without merit. Defendants acknowledge, as they must, that a parent may not unjustifiably interfere with a subsidiary's contract with a third party. Thus, a claim for tortious interference against a parent may lie if there is unjustifiable interference. Plaintiffs have alleged precisely this: "Utilicorp has acted deliberately, unjustifiably, and with a willful disregard and indifference for the known contractual rights of each of the plaintiffs." (Compl. ¶ 15.) Moreover, whether Utilicorp was justified in interfering with the contracts between Everest and Plaintiffs is a question of fact, certainly not amenable to resolution on a motion to dismiss.

Further, Plaintiffs have sufficiently pled the bad faith required by Delaware law.[1] See Shearin v. E.F. Hutton Group, Inc., 652 A.2d 578, 591 (Del. Ch. 1994) (holding that "the gist of a well-pleaded complaint for interference by a corporation of a contract of its affiliate is a claim that the 'interfering' party was not pursuing in good faith the legitimate profit seeking activities of the affiliated enterprises"). As noted above, Plaintiffs allege that Utilicorp acted with willful disregard and indifference, and acted unjustifiably. The Complaint states a claim against Utilicorp for tortious interference.

**C. Motion to Transfer Venue**

Finally, Defendants contend that the forum-selection clause in the Vesting Agreement

---

[1] The Employment Agreement's choice-of-law provision states that Missouri law governs. (Potter Aff. Ex. 5 § 8.) The Vesting Agreement provides that Delaware law governs. (Potter Aff. Ex. 7 § 8.)

requires the transfer of this matter to the District of Delaware, or that, under 28 U.S.C. § 1404, the Court should transfer the matter to Missouri.

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, the statute mandates three factors for a court to consider when determining whether transfer is appropriate: (1) the convenience of parties; (2) the convenience of witnesses; and (3) the interests of justice. However, a court is not limited to considering only these three factors, because transfer determinations "require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).

The party seeking a transfer bears the "heavy" burden to establish that the balance of factors "strongly favors the movant." United Mortgage Corp. v. Plaza Mortgage Corp., 853 F. Supp. 311, 315 (D. Minn. 1994) (Doty, J.) (emphasis omitted). Transfers under § 1404(a) "should not be freely granted," id., and there is a presumption in favor of the plaintiff's forum choice. Christensen Hatch Farms, Inc. v. Peavey Co., 505 F. Supp. 903, 911 (D. Minn. 1981) (Renner, J.).

A forum-selection clause may be indicative of the appropriate venue for an action, but it is not dispositive on the issue. Rather, courts should consider the existence of a forum-selection clause as one factor to be weighed in the determination required by § 1404. Stewart

Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988). Defendants' contentions to the contrary notwithstanding, the fact that one of the three contracts Plaintiffs signed contained a clause designating Delaware as the forum for disputes arising out of that agreement does not preclude the Court from evaluating whether the convenience of parties and witnesses and the interests of justice dictate the transfer Defendants request. 28 U.S.C. § 1404(a).

The cases cited by Defendants in support of their contention that the forum-selection clause is dispositive on the issue of transfer are not on point. The majority of these cases involve contracts between two corporations, and attempts by one corporation to evade the forum-selection clause it negotiated and bargained for. See United Mortgage, 853 F. Supp. at 315. Such is not the situation here. While Defendants paint Plaintiffs as sophisticated businesspeople, the fact remains that Defendants are large corporations or subsidiaries thereof, while Plaintiffs are individuals. Defendants cannot claim that Plaintiffs were on equal footing with Defendants when entering into the Agreements at issue. Thus, in this situation any presumption in favor of a forum-selection clause must yield to considerations of the relative bargaining power of the parties and the factors outlined in § 1404(a).

Despite the existence of the forum-selection clause, a transfer to Delaware is not convenient for any party or for any witnesses in this case. Nor is such a transfer in the interests of justice. None of the parties is located in Delaware, and none of the witnesses is located in Delaware. Moreover, none of the events giving rise to Plaintiffs' claims took place in Delaware or indeed has any relation to Delaware. A transfer to Delaware is not in

the interests of justice.

Defendants argue in the alternative that Missouri is a more convenient forum than Minnesota and that the case should be transferred there. The essence of Defendants' argument is that Missouri is more convenient for Defendants. Missouri is certainly not more convenient for Plaintiffs, two of whom reside in Minnesota and one of whom resides in Wisconsin. "[A] transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer." Nelson v. Master Lease Corp., 759 F. Supp. 1397, 1401 (D. Minn. 1991) (MacLaughlin, J.) (citing Van Dusen v. Barrack, 376 U.S. 612, 646 (1964)). A transfer to Missouri is not warranted.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court concludes that Plaintiffs did not agree to arbitrate their claims. Further, the Court determines that a transfer of this matter is not appropriate. Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss/Stay and to Compel Arbitration (Clerk Doc. No. 9) is **DENIED**.

Dated: October 10, 2001

Paul A. Magnuson
United States District Court Judge